## Kent *et al.* Appellants, *v.* Allbritain.

In order to constitute a mortgage, it is not essential that the condition should be inserted in the body of the deed.  It will be good if written underneath the deed.

A bill of sale with a condition to redeem is a mortgage, and where an additional loan is made thereon, and further time given to redeem, that fact may be shown by parol.

APPEAL from the Superior Court of Chancery.

The appellee filed his bill in the court below, in which he states that in the year 1830 or '31, he applied to Kent, one of the defendants, for a loan of money.  That Kent then advanced him the sum of three hundred dollars, and that to secure the payment of the same, he executed a deed of mortgage to the said Kent for a negro slave named Tom, and delivered to him the possession of the negro.  That about one year afterwards, Kent advanced him the further sum of two hundred and fifty dollars, which was the residue of the sum originally contracted for by complainant, and receipted for by complainant's brother.  At the time of advancing the last sum, it was agreed by parol, that complainant might redeem the slave at any time within ten years.  He has at different times offered to do so and tendered the sum borrowed to the said Kent, and also to Stephen Granberry, the other defendant, who is now in possession of the negro, but that both have refused to permit him to redeem.  Granberry claims the slave under a purchase from Kent, who had full notice of the mortgage.

The answer of Kent admits the loan of $300 in 1830, and the execution of the bill of sale, with a condition that he was to have the use of the slave until January, 1833, and if the money was not then paid, the property was to belong to him.  That in 1832 he made an absolute purchase by advancing $250 more.  That this sum was paid to complainant's son, who gave him a receipt for it, and paid the same to complainant, who received it in full satisfaction for the boy.  He denies that he agreed to let complain-

27*

ant redeem at any time within ten years. Admits that after he sold the boy to Granberry, complainant offered to redeem by paying $550. The answer of Granberry admits the sale of the boy to him for $600, and as to other matters stated in the bill, adopts the answer of Kent. It did not admit or deny the notice of the mortgage charged in the bill. It was excepted to, and the exceptions sustained, and he made no further answer. There was a *pro confesso* decree against him. James and Matthew Allbritain prove the payment of the sum of $550 at the two several times mentioned in the bill and answers, and that by the agreement Kent was to have the labor of the boy for the interest on the money, and Kent was bound to re-deliver him whenever the money was paid by complainant, if it was ten years. Robert F. Sibley, another witness, proves that Kent told him he had loaned to complainant $300, and that the negro was to work for the use of the money until it was paid. Witness told Kent the labor of the boy was worth more than the interest, and Kent replied that he would allow complainant $100 per annum for the services of the slave, and charge him 10 per cent. for the use of the money, and that when the negro worked out the principal and interest, he would return him. An account was directed to be taken by the chancellor. The commissioner made complainant indebted to Kent a balance of $96 50. Hire was allowed at the rate of $100 from the 18th of December, 1830, to the 18th of November, 1838. This report was confirmed and a final decree made that the complainant recover the negro from Granberry, and hire at the rate of 32 cents per diem, until he is delivered in pursuance of the decree.

The conditions of the bill of sale written under the same and signed, was as follows: "The condition of this bill of sale is such, that if the said Richard Allbritain doth pay or cause to be paid unto the said Kent the sum of three hundred dollars, on or before the first day of January, 1833, then the above bill of sale to be void, otherwise to be of full force and effect."

Hughes for appellants.

1. We insist that the decree is erroneous, and ought to be reversed, because it does not pursue the report, which should have been its basis. Upon what principle is it, that, when an account is

ordered, the account taken, report made, and the report confirmed, that report may be disregarded, and a decree pronounced against the report, it is difficult for counsel to conceive. A decree different from the one rendered, and one of two kinds should have been pronounced. 1. There should have been a decree in favor of Kent, for the ninety-six dollars and fifty cents reported in his favor; or 2. and which would have been the only decree which could be rendered in the case: the court should have decreed that Granberry deliver the negro, and pay the $160 found against him, and that complainant pay to defendant, Kent, the $256 50, reported in his favor.

2. But we insist there should have been no decree at all in favor of the complainant; because, the case made out by the bill is not the case as made out by the answers and proof.

The bill is filed to redeem a mortgage, and the bill alleges a mortgage and calls upon the defendant to answer and produce the mortgage. The answers deny that a mortgage was executed; admit however, that a mortgage was intended, but the paper which is produced is not a mortgage. The bill of sale and the condition to it, show a liberty to re-purchase, or a conditional sale. The testimony shows the same thing. See American Equity Digest, 264, § 50. Gray *v.* Prather, 2 Bibb, 228. Price *v.* Bearden, 1 Marsh. 169. Pratten *v.* Norflet, 1 Marsh. 178.

The rule is that when a case is stated by a bill, and the answer and proof make a different case, the bill must be dismissed, unless the complainant amend his bill. See Lindsay *v.* Lynch, 2 Schol. and Lefroy, 1 to 11.

3. But if it were competent to ask the court to decree upon the facts made out by the answer and proofs, yet the complainant could have no decree, because the bill is not framed with a view to meet the case. The answer shows that there was a mistake in the execution of the bill of sale, the transaction there being a loan of money and not a mortgage, but being by mistake a conditional sale. It is not competent to alter, vary, or change a written instrument by parol. 1 Phillips on Evidence, 223. This rule is enforced as well in a court of equity, as in a court of law, and unless a bill be filed for the purpose of correcting a mistake, no such testimony can be received. 2 Equity Digest, 73, S. 13. A

mistake never can be collaterally inquired into, but only in a case when by the pleadings the question is raised.  2 Equity Dig. 75. sec. 38.    9 Cowen, 747.

4. But again, suppose the court will say that they are authorised to proceed in this case, and not dismiss the bill, it is then insisted that there can be no decree for redemption, because the property was sold to Granberry without notice of the claim of complainant.  It is true that complainant alleges notice; but the answer of Kent & Granberry show notice to Granberry of a conditional sale merely.  There is no proof of notice.  It is also true that the bill was taken for confessed; but the effect of this confession is taken away by the agreement of the parties in the court below to read the answer of Granberry.

5. But if Granberry had notice of a mortgage, he had notice also of the relinquishment of the equity of redemption.  Was there then a relinquishment of the equity of redemption?  It is contended that there was.  The bill charges a mortgage, and the payment of three hundred dollars of the money, at the time of its execution, and two hundred and fifty dollars thereafter, and calls upon the defendants by interrogatory to answer as to these facts.  The defendants do answer, admit the execution of the paper, also the payment of the three hundred dollars, but deny that the two hundred and fifty dollars was advanced on the mortgage; but, on the contrary, that the two hundred and fifty dollars was paid in consideration of the relinquishment of the equity of redemption, and he files with his answer a paper executed by the agent of Allbritain, the complainant.  The facts are not contradicted by the proof but in part, and the proof, as can be shown, ought not to be credited.

The answer, being responsive to the bill, is evidence.  See the rule on this subject in Woodcock *v.* Bennett, 1 Cowen, 743.

It is true, then, that whatever may have been the original character of the transaction, that the equity of redemption was released, and the complainant had no right to redemption, or a right to repurchase.

6. But should the court differ with us, then we say that the complainant's own proof makes out a case of liberty to repurchase in a given time, or an agreement to sell, on condition that appli-

cation was made in a given time. In each case, the right to the thing only rests upon the offer to pay the money within the time, and from that time only should there be a decree for him.

· Thompson, for Appellee.

The allegation in the bill, that the transaction between complainant and defendant, Kent, was the loan of money by defendant to complainant, and the mortgaging the negro Tom to secure the re-payment of the money is clearly evidenced by the writing itself. See the case of Hammonds *v.* Hopkins, 3 Yerger's Rep. 526. There the writing was not so explicitly a mortgage as in the present case, and the defendant insisted in his answer that the parties intended a sale, still the court seem to think it too plain to admit of controversy, that it was a mortgage. Upon this point authorities innumerable might be cited, but it is believed that it would be an unnecessary waste of time.

The answer acknowledges that the advance of the $300 was a loan of so much money to complainant by defendant, but defendant insists that although the use of the boy was to go for the interest of the money, yet this was a conditional sale and not a mortgage. By his own acknowledgment it was a mortgage, and not a conditional sale. The very fact of loaning money and taking a deed or other instrument, conveying or transferring property to secure the repayment constitutes a mortgage in contradistinction to a sale, absolute or conditional, which are never predicated on a loan, for they are inconsistent with it. See Hardin's Rep. 6, Reed *v.* Lansdale; 5 Littel's Rep. 86; Butler's note to Coke's Lit. 205, a; 1 Vern. 190, 192; 3 J. J. Marshall, 354, Edrington *et al. v.* Harper.

The defendant Kent denies that the further advance of the sum of two hundred and fifty dollars was a loan as charged in the bill, but insists that it was paid on the purchase of complainant's right of redemption, and relies upon the receipt signed "Stephen Allbritain for Richard Allbritain." There is no evidence to prove that ever Stephen Allbritain was authorised, in any way whatever, to give this receipt, or even that he was the agent of complainant, or that the money was ever paid to him, or that he ever paid it to complainant. But on the contrary, James Allbritain and Matthew

Allbritain prove that the two hundred and fifty dollars were advanced as a loan and that Tom was to continue as security and to work for the use of the whole amount, five hundred and fifty dollars; and complainant to have the right to redeem him at any time if it was even ten years. It will be remarked, the defendant will not deny in his answer, the statement of the bill, that when he first got possession of Tom he agreed to loan complainant, on that security, five hundred and fifty dollars, but he passes over this allegation in silence. The law is, that a mortgagee who pretends to have purchased from the mortgagor, the right of redemption, must show it by clear and convincing proof. 3 Yerger Rep. 526. Here the defendant does not show it by any kind of legal proof, and that he did not purchase the right as he contends by advancing the additional sum of two hundred and fifty dollars, is shown by the positive swearing of two witnesses.

The answer of the defendant Kent acknowledges the tender to him of the five hundred and fifty dollars in January, 1834. If it should be contended that this tender was not formally and technically made, without delaying to argue the point, we reply that it was not necessary where the defendant positively declared he would not receive the money. Littell's selected Cases, 204; Dorsy *v.* Barbee, &c.; Cooly *v.* Weeks, 10 Yerger's Rep. 141.

The bill charges that the defendant Granberry had the possession of the slave, and Kent "pretends" to have sold him to said Granberry. Kent and Granberry both answer that Granberry had purchased him, they do not say when; and there is no proof of the purchase. For Granberry not having answered as to his knowledge of the negro being held by Kent in mortgage and as to the tender to him, his answer was excepted to, the exceptions sustained, and he not having answered further, there was a *pro confesso* taken against him; and this was never set aside. His answer and exhibit were, by consent, read on the hearing of the cause; the exhibit, which is a bill of sale from Kent to Granberry for the boy Tom, was not proven. But this matters not, Granberry is in no better condition than Kent.

There is then nothing to prevent a redemption, there is no pretence of the statute of limitations applying. It does not, moreover, run between mortgagor and mortgagee, and whether it

could run in favor of a purchaser from the mortgagor, it is not necessary to enquire, for here the bill was filed in 1836, before the statutory bar would have applied, even to a proper case, because the time to form a bar had not elapsed.   The defendants, it is contended, have been shown to be in the wrong in this whole matter, and it is believed that a decree should have gone against them jointly for the hire and the return of the slave.   They refused to let complainant redeem, compelled him to resort to a court of chancery, and having litigated the matter from beginning to end, they ought of course to pay all the cost and hire from the time of the final decree in the court below.

Mr. Chief Justice TROTTER delivered the opinion of the court.

Several objections have been made against the form of the decree, which it is not deemed necessary to notice, as it can be set right in this respect if it shall be found that the complainant is entitled to a decree upon the facts of the case.   We do not conceive it to be essential in order to constitute a mortgage, that the condition should be inserted in the body of the deed.   It may be established by the production of a collateral deed, of defeasance, or by proof of any agreement which creates the relation of mortgagor and mortgagee.   In this case the bill of sale had the condition attached to it at the foot of the conveyance, and is most clearly nothing more than a mortgage. It is in this respect similar to the conveyance and bond to reconvey in the case of Hammonds *v.* Hopkins, 3 Yerger's Rep. 526.   And cannot therefore be considered in the light of a sale absolute in its terms, with liberty to the complainant to re-purchase.   This was so ruled expressly in the case just cited.   The court said there could be no doubt that the contract in that case was a mortgage.   In his answer, Hopkins stated that Hammonds complained that the money loaned was not an equivalent for the land conveyed, and Hopkins therefore subsequently gave him a negro, with which he was satisfied.   But there was no proof in support of this part of the answer.

It was insisted in that case, as it is in the one at bar, that this was a purchase of Hammonds' equity of redemption.   But the court held that the proof in support of the allegation rested with the defendant, and that it should be clear and convincing.   In this

case Kent has offered no proof that the purchase of the complainant's equity of redemption stated in his answer, was made. It is true he has produced a receipt of the son of complainant, in which it is stated that the money received was the balance due on the purchase of the negro. But it is not shown that the son had any authority to execute such an instrument.

This part of the answer rests upon no foundation save the unsupported statement of the defendant. This allegation in the answer is moreover contradicted by the testimony of the witnesses who have been examined in the cause, as well as the whole circumstances which attend the transaction. This part of the answer being in avoidance of complainant's title by the new and affirmative matter which is set up by it, should have been distinctly and satisfactorily established by undoubted proof. This not being done, we cannot notice it.

It was urged on the argument that the proof of the intention of the parties at the time of making this contract ought not to have been received. That though it may be true that a mortgage was intended, yet as the bill does not aver an intention different from the plain import of the written contract, the misapprehension of the parties cannot be explained or corrected in the manner attempted.

This objection is grounded on the assumption that the sale to Kent was absolute, with liberty merely to repurchase. If we are right in the views which have been already taken of the nature of the contract stated in the bill, this objection ceases to have any force, and especially so, if it is competent to hear evidence to prove the condition of the sale, *aliende* the written contract. Had the bill of sale in this case wanted the condition which is attached to it in writing, yet we apprehend it would have been competent to the complainant to establish the trust to redeliver, by parol or other extrinsic proof. The bill treats the contract as a mortgage, and the proofs fully support the bill. No mistake is alleged, nor is there any effort on the part of the complainant to prove one.

The complainant is clearly entitled to redeem the slave so mortgaged. The report of the commissioner, which is dated the 18th March, 1838, shows a balance due, to that date, from complainant to Kent, of $96.50. Hire is allowed at the rate of thirty-two

[Kent *et al.* Appellants, *v.* Allbritain.]

cents per diem for him in the decree of the chancellor, until the slave shall be delivered.   The decree was rendered on the 1st day of February, 1839.   Allowing the same rate of hire from the 18th of March, 1838, until the 1st of February, it will be found that the arrearages for hire, up to the date of the decree, want merely a fraction of absorbing the balance of $96.50, which was found due to Kent from complainant, after allowing interest on the same.   The difference is too trifling to require any notice. This is the reason, we apprehend, why no notice is taken by the chancellor of the sum reported by the commissioner.

The decree must be affirmed.